M. W. GORE, F. E. LAY, H. L. SMITH, C. C. NEEDHAM, E. H. COX, TILL-
MAN SUGGS, CLAY FORMYDUVAL, AND OTHERS, PATRONS OF GUIDE-
WAY AND OLD DOCK-NAKINA SCHOOL DISTRICTS, AND TAXPAYERS,
FOR THEMSELVES, AND ON BEHALF OF ALL OTHER PROPERTY OWNERS AND
TAXPAYERS OF THE COLUMBUS COUNTY ADMINISTRATIVE UNIT OF
PUBLIC SCHOOLS, WHO MAY COME IN AND MAKE THEMSELVES PARTIES,
v. COLUMBUS COUNTY, ALEX WEIR, D. H. JORDAN, BUD STEPH-
ENS, W. F. FLOYD, J. T. WOOTEN, JR., CONSTITUTING THE BOARD OF
COUNTY COMMISSIONERS OF THE COUNTY OF COLUMBUS; THE
BOARD OF EDUCATION OF COLUMBUS COUNTY, R. J. LAMB,
JAMES W. PEAY, LEEMAN WARD, KINSEY LONG, B. L. TOWNSEND,
F. T. WOOTEN AND BROADUS SMALL, MEMBERS OF SAID BOARD OF
EDUCATION OF COLUMBUS COUNTY.

(Filed 22 November, 1950.)

**1. Schools §§ 3a, 6a—**

Ordinarily the courts will not interfere with the discretionary authority
of the county board of education to select school sites and consolidate
schools of a district, and, with the approval of the State Board of Educa-
tion, to consolidate school districts. G.S. 115-99.

**2. Schools § 10h: Administrative Law § 2—**

A statute authorizing a school board to make changes in the allocation
of funds from a school bond issue cannot empower the board to do so in
the exercise of an arbitrary discretion but only in the exercise of a dis-
cretion in good faith in the light of existing facts and circumstances.
Chap. 942, Session Laws of 1949.

**3. Schools § 10h—County board may not use funds from school bond issue
for different project without finding that original project was no longer
necessary.**

The bond order and the advertised statement of the purpose for which
funds from a proposed school bond issue were to be used stipulated, *inter
alia*, improvements in the elementary school of one district by the addition
of eight classrooms, and improvements in the elementary and high school
of another district. Thereafter the county board of education, on the
basis of a survey, proposed to use the entire funds allocated for such
improvements for the erection of a new high school building for the use of
both schools. *Held:* The county board of education has no power to re-
allocate the funds for the erection of the new high school in the absence
of a finding in good faith that the erection of such new high school would
so relieve the pupil load on the elementary schools that the use of the
funds for the improvement and enlargement of the elementary schools
would no longer be necessary because of changed conditions. G.S. 115-99.

APPEAL by plaintiffs from *Burgwyn, Special Judge,* at Chambers in
the City of Wilmington, N. C., 16 August, 1950. From COLUMBUS.

This action was instituted for the purpose of restraining the defend-
ants, their agents and employees, from using the funds originally allo-

·cated to the Old Dock-Nakina and Guideway School Districts for remod-
·eling and enlarging the elementary school buildings for any other purpose.

1. In February, 1947, the Board of Commissioners of Columbus
·County passed an order "authorizing not exceeding $1,000,000 school
building bonds of Columbus County for the purpose of erecting, remodel-
·ing and enlarging school buildings, including the acquisition of necessary
land and equipment."

2. A special election was duly and legally held on 25 March, 1947, and
·the voters approved the issuance of the bonds.

3. The bond order contained the following statement: "The order
·referred to above authorizing not exceeding $1,000,000 school building
·bonds for the purpose of erecting, remodeling and enlarging school build-
ings, including the acquisition of necessary land and equipment, as fol-
·lows: . . . Columbus County Administrative Unit; Remodeling and en-
larging the following school buildings for white children." There follows
·a list of eight districts, among them being District No. 9, Old Dock-
Nakina School and District No. 10, Guideway School.

4. Prior to the special election, John M. Hough, the Superintendent
·of Public Instruction of Columbus County, caused a statement to be pub-
lished in a local newspaper, informing the citizens of Columbus County
·what each school district would get if the voters approved the proposed
bond issue. The improvements listed for the school districts involved in
·this controversy were described as follows: "Old Dock Nakina—Gymna-
·sium—alterations." "Guideway—8 class rooms—gymnasium." Pro-
·ceeds from the bond issue were thereafter allocated for the purpose of
making the above improvements.

5. Thereafter, W. J. Boger was elected Superintendent of Public
Instruction for Columbus County, and he requested the Director of the
Bureau of Educational Research and Service of the University of North
Carolina to make a survey of the county schools of Columbus County "to
·serve as a guide for the County Board of Education in the development
·of the schools." The Bureau, together with numerous other persons con-
·nected with educational institutions and organizations in North Carolina,
made the survey. Whereupon, in May, 1948, the Bureau of Educational
Research and Service made the following report:

"In light of the conditions and a knowledge of certain facts concerning
Columbus County and its educational needs and problems, the following
recommendations are made: WHITE RACE. High School District #1.

"At the present time there are three high school and eleven elementary
teachers housed in the Old Dock School. There are 82 high school and
480 elementary pupils enrolled in this school. In the Guideway School
there are 11 elementary teachers and 478 elementary pupils. The high
school pupils from the Guideway district are being transported twenty

miles or more daily. Although this area of the county is sparsely settled, it is thought that there should be a high school built on a new 20 acre site in the vicinity of Nakina. This high school should be either a four year (grades 9 through 12) or a six year (grades 7 through 12) high school. If a four year high school, there should be approximately 150 pupils within a short time. If a six year high school, the enrollment would be about 325 pupils. It is thought the latter organization might develop a better school for a longer period of time. This will require the erection of a modern high school plant, including auditorium, gymnasium, cafeteria, and facilities for vocational education. Old Dock and Guideway should remain as elementary centers.

"a. Old Dock Elementary Center—Six grades. This school would have approximately 380 pupils and require the services of about 10 teachers. This building will be adequate for either a six or eight grade school. It will need some minor repairs such as painting, repairing plaster, and new shades. The grounds should be made more suitable for school use.

"b. Guideway Center—Six grades. This school would have approximately 380 pupils and require the services of about 10 teachers. If this school is made a six grade elementary school, the old frame building could be discontinued. The present building will meet the needs of a six grade school. There will be needed some major repairs such as new light fixtures, drinking fountains inside building and new chalkboards. The frame building being used for class rooms could be made into a cafeteria. More playground is needed for this center."

6. The General Assembly passed an Act, being Chapter 942, 1949 Session Laws of North Carolina, authorizing the Board of Education, and the Board of Commissioners of Columbus County, to reallocate a portion of the funds of the $1,000,000 bond issue "in their discretion, subject to the approval of the State Superintendent of Public Instruction and the Director of School Planning, for the following school purposes: Erecting a central high school building to serve the Old Dock-Nakina and Guideway Schools in lieu of remodeling and enlarging said two schools as recited in said order."

7. On 1 October, 1949, the County Board of Education of Columbus County passed a resolution which was approved on 3 October, 1949, by the Board of Commissioners of said county, which recited in its preamble the report of the Bureau of Educational Research and Service, exclusive of paragraphs a and b, and further recited that the School Committee members of Old Dock-Nakina and Guideway Schools had requested the building of a central high school upon a suitable site midway between the present schools, and that the sum of $40,000 had been allocated to Guideway School and the sum of $50,000 had been allocated

to Old Dock-Nakina School. The preamble states at some length the advantages to be gained by the construction of the high school, and then adopts the following resolution:

"Now, therefore, be it resolved that the Board of Commissioners of Columbus County do hereby authorize and approve the reallocation of $90,000 of the proceeds of the unissued $335,000 school building bonds authorized by the bond order herein aforementioned for the erection of a central high school building to serve the Old Dock-Nakina and Guideway Schools, in lieu of remodeling and enlarging said two schools as recited in said bond order."

8. The plaintiffs obtained a temporary injunction, on 24 July, 1950, restraining the defendants from entering into any contract which would obligate them to use the funds originally allocated to the Old Dock-Nakina and Guideway Schools.

At the hearing below, the court held the Act passed by the General Assembly in 1949, referred to above, authorizing the transfer of the funds in question, is constitutional; and, that the resolution referred to in the 7th paragraph herein, finds facts sufficient to authorize the construction of the proposed high school in lieu of remodeling and enlarging the present schools in the two districts involved.

The court further found as a fact "that it is the duty of the Board of Education of Columbus County to furnish all necessary improvements on the old buildings at the said two schools, to the end that the pupils in both schools should be as well provided for in buildings and equipment as any other comparable or like schools in Columbus County."

Upon the aforesaid findings of fact, the court dissolved the temporary restraining order.

The plaintiffs except, appeal and assign error.

*Alton A. Lennon and Isaac C. Wright for plaintiffs.*
*W. H. Powell, E. K. Proctor, and McLean & Stacy for defendants.*

DENNY, J. The sole question presented for determination on this appeal is whether or not the court below committed error in dissolving the restraining order heretofore issued.

The appellants strenuously contend the order should have been continued to the final hearing, and we are inclined to agree.

A county board of education has the authority "to consolidate schools located in the same district, and, with the approval of the State Board of Education, to consolidate school districts, over which the board has full control, whenever and wherever in its judgment the consolidation will better serve the educational interests of the county or any part of it." G.S. 115-99.

Ordinarily the courts will not interfere with the control and super-vision of the school authorities in the exercise of their discretion in creat-ing or consolidating school districts, or in the selection of a school site. *Feezor v. Siceloff, ante,* 563; *Atkins v. McAden,* 229 N.C. 752, 51 S.E. 2d 484; *Board of Education v. Pegram,* 197 N.C. 33, 147 S.E. 622; *Board of Education v. Forrest,* 190 N.C. 753, 130 S.E. 621; *Davenport v. Board of Education,* 183 N.C. 570, 112 S.E. 246; *School Commissioners v. Aldermen,* 158 N.C. 191, 73 S.E. 905; *Venable v. School Committee,* 149 N.C. 120, 62 S.E. 902. And it must be conceded that when the entire evi-dence disclosed by the record herein is considered, a strong case can be made out in favor of the construction of the proposed high school. Such a high school would no doubt "better serve the educational interests" of the two districts with respect to high school courses, courses in agriculture, home economics and commercial training. But the real question which is determinative of this appeal is whether the law sanctions the reallocation of these funds without an affirmative finding that the construction of the proposed high school will relieve the elementary schools in the two dis-tricts of their overcrowded conditions and make the whole or any part of the expenditure of such funds on these elementary school plants unnecessary.

On the present record there is no finding by the County Board of Education of Columbus County, or of its Board of County Commission-ers, whether the proposed high school will accommodate four or six grades. It is clearly disclosed by the evidence, however, that if it is to be a four year high school (grades 9 through 12), the enrollment of the Guideway School will not be reduced by a single pupil, and yet it has been found, heretofore, that eight additional classrooms are necessary to meet the needs of that elementary school. Likewise, if the proposed high school is to be a four year school, the Old Dock-Nakina School will be relieved only of its high school pupils. This high school is a sub-standard one with a present enrollment of 66 and an average daily attendance of only 61. If, on the other hand, the new high school is to take care of six grades (7 through 12), the Board of Education may find that the present facilities at these schools will be adequate to take care of the remaining elementary grades. If such be the case, and sufficient funds are retained from the funds allocated to these districts, or if funds are available from other sources, to put these elementary school buildings in adequate repair, then any surplus funds allocated to these school districts may be reallo-cated for the purpose of building the proposed high school. *Atkins v. McAden, supra.*

The General Assembly has no power to authorize local school authori-ties to exercise an arbitrary discretion, without regard to the existing facts and circumstances involved. Therefore, we hold that Chapter 942,

of the 1949 Session Laws of North Carolina, authorizing the transfer of these funds in the discretion of the Board of Education and the Board of Commissioners of Columbus County, did not obviate the necessity for such discretion to be exercised in good faith, in light of the existing facts and circumstances.  And if it be conceded the facts found with respect to the establishment of a new central high school are sufficient to justify the reallocation of any surplus bond funds to that project, they are insufficient, in our opinion, to authorize the reallocation of the funds theretofore allocated to other projects, unless it is found as a fact by the Board of Commissioners of Columbus County, acting in good faith, that such original projects are no longer necessary by reason of changed conditions, or that the proposed new project will eliminate the necessity for the originally contemplated expenditures, and "will better serve the educational interests" of the districts involved. G.S. 115-99; *Atkins v. McAden, supra; Waldrop v. Hodges,* 230 N.C. 370, 53 S.E. 2d 263; *Feezor v. Siceloff, supra.*

In the case of *Waldrop v. Hodges, supra,* this Court held that a board of education and a board of commissioners in a county "have limited authority, under certain conditions, to transfer or allocate funds from one project to another, *included within the general purpose for which bonds were authorized,* the transfer must be to a project included in the general purpose as stated in the bond resolution and notice of election. *Atkins v. McAden, supra.*  The funds may be diverted to the proposed purposes only in the event the defendant Board of Commissioners finds in good faith that conditions have so changed since the bonds were authorized that the proceeds therefrom are no longer needed for the original purpose."

In the case of *Feezor v. Siceloff, supra,* the question presented on this appeal was not raised.  But, on the contrary, each school district involved had a small high school in a building occupied by an elementary school, and one of the arguments for the construction of a consolidated high school, to serve all three districts, was to give the elementary schools the additional space occupied by the high schools.  No question of the adequacy of the elementary schools was raised or the need of funds for their repair.

On the present record, in our opinion, it was error to dismiss the restraining order, but it should have been continued to the final hearing. Consequently, the order dissolving the restraining order heretofore entered is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Error.