G. H. PARKER, A TAXPAYER, AND ALL OTHER TAXPAYERS IN THE ANSON COUNTY ADMINISTRATIVE SCHOOL UNIT WHO MAY DESIRE TO BECOME PARTIES PLAINTIFF HERETO, v. THE COUNTY OF ANSON, NORTH CAROLINA, AND THE BOARD OF EDUCATION OF THE COUNTY OF ANSON, NORTH CAROLINA.

(Filed 30 January, 1953.)

**1. Schools § 10b—Resolutions of county administrative units and board of education held sufficient.**

The county in question had two local school administrative units and a county administrative unit which embraced all of the county not included in the two local units. The three units filed identical resolutions with the board of commissioners, each of which detailed all the proposed projects for the entire county. *Held:* The resolutions complied with G.S. 115-83 regardless of whether it is required that the county board of education propose the necessary projects for all the administrative units of the county, or whether each unit must file a petition setting forth its own particular needs.

**2. Statutes § 13—**

The provision of the County Finance Act (G.S. 153-96) and the provision of the Election Law Act (G.S. 163-150) relating to form of ballots, were both brought forward and re-enacted in the General Statutes, and since there is no material conflict between them, both are in full force and effect and must be construed *in pari materia* as relating to the same subject matter.

**3. Elections § 10: Schools § 10b—**

A ballot for a school bond election which states the question submitted for approval or disapproval followed by a brief statement of the purposes for which the proceeds of the proposed bonds are to be used and that a tax would be levied to pay the principal and interest on the bonds in event of approval, followed by the word "Yes" and the word "No" and a square opposite each with instructions as to how the ballot should be marked, *is held* to comply with G.S. 163-95 and G.S. 163-150, and the fact that the number of proposed projects necessarily results in a ballot somewhat longer than usual is not objectionable.

**4. Taxation § 2—**

Where a county has assumed all bonds and other indebtedness of all its school districts, the limitation on its debt is to be ascertained on the basis of the assessed valuation of property for the entire county and not that of the school administrative units in which the projects lie. G.S. 153-83, G.S. 153-87.

**5. Schools § 10b—**

Where a county has assumed the indebtedness of all its school administrative units, all the electors of the county have a right to vote in a school bond election for improvements in any school administrative unit in the county. G.S. 153-77, G.S. 153-91, G.S. 153-93.

PARKER *v.* ANSON COUNTY.

**6. Same—**

The fact that in a school bond election for projects presented by the school authorities and approved by the board of county commissioners, the board of county commissioners also submits without warrant of law a proposal initiated by it in regard to the schools *is held* not to so complicate the election as to render it void.

**7. Same—**

While the board of county commissioners is authorized to determine what expenditures shall be made for school building purposes in the county, G.S. 115-83, this right arises only when proposals for such expenditures are submitted to it by the board of education, and the board of county commissioners has no authority to initiate such project or submit same in a school bond election.

**8. Schools § 10h—**

While plans for the expenditure of the proceeds of bonds authorized by a school bond election are subject to change within proper limitations, such a change must be initiated by the county board of education.

**9. Same—County commissioners may not change basic purpose for which school bonds were approved.**

Proposals for school improvements, including the building of a high school in a certain section of the county, were duly approved in a school bond election. On the same ballot the board of county commissioners, without warrant of law, submitted a proposal not to build the high school if another high school in the county could be made sufficient and available for all of the high school students of the county. *Held:* The total amount of the bonds approved by the electors should be used for the purposes authorized in the absence of some compelling ground for modification initiated by the county board of education, and the board of county commissioners may not diminish the amount of the bond issue by the estimated cost of the proposed high school, since such change would involve a complete change of purpose in respect to the county high schools rather than a change in manner and method. G.S. 153-87.

**10. Schools § 3a—**

The county board of education and not the board of county commissioners is vested with authority to decide the number and location of high schools necessary within the county and to consolidate high schools within the county.

PARKER, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Pless, J.,* in Chambers, 13 October 1952, ANSON.

Civil action to invalidate a school bond election and to enjoin the sale of school capital outlay bonds in the sum of $1,250,000 authorized thereby.

There are three school administrative units in Anson County: the Wadesboro, the Morven, and the County Administrative Units. The County Unit embraces all of the County not included in the other two.

PARKER v. ANSON COUNTY.

There was a conference of the governing authorities of the three units at which they surveyed and agreed on the school plant facilities which were necessary to enable the County to maintain the schools as a part of the State school system for a full nine months' term. They agreed on seven specific projects together with one for the acquisition of the necessary land and one for the necessary equipment for the proposed enlarged reconstructed and new buildings—nine in all.

Thereafter the County Board of Education, the Trustees of the Wadesboro Unit and the Trustees of the Morven Unit adopted identical resolutions which recite the consultation of the several units and the resulting agreement, and set forth the nine proposed projects for which capital in the sum of $1,250,000 is required and requesting the Board of Commissioners of the County to provide the money necessary to finance such school plant facilities. These resolutions were duly filed with the Board of Commissioners of the County. The required financial statements were also presented to said Board.

A hearing was had 5 May 1952 at which the Board of Commissioners duly adopted a bond order authorizing the issuance of school bonds in the sum of $1,250,000 to finance the specific projects proposed by the several school administrative units and calling an election thereon to be held 28 June 1952.

The bond order in Section 2 thereof lists the seven specific and the two general projects recommended by the administrative units as the projects to be financed by the proceeds of the proposed bond issue, and Section 3 thereof is as follows:

"Section 3. The Board of Commissioners has ascertained and hereby determines that it is necessary to provide such additional school plant facilities described in this bond order so that said County may maintain public schools in said County, as an administrative agency of the public school system of the State of North Carolina, for the nine months' school term, and that it will be necessary to expend for such school plant facilities the sum hereinbefore appropriated thereto, in addition to other moneys available therefor."

At the same meeting the Board of Commissioners adopted another resolution, unsupported by any petition from any one of the school administrative units, calling an election at the same time on the question "whether the qualified voters of the County desire that the County Board of Education shall erect, at an estimated additional cost of from approximately $300,000 to $400,000, the new high school building with gymnasium and the teacherage in the northwestern section of the County which is described in said bond order in the event that the existing high school in Wadesboro is to be made available to and adequate for all white high school children in the County."

The election was duly held 28 June at which the two propositions were submitted to the qualified voters of the County for their approval or disapproval.

The first proposition submitted listed each specific project contained in the resolutions of the several school administrative units and in the bond order and read in part as follows:

"Shall the qualified voters of the County of Anson approve the bond order entitled 'Bond Order authorizing the issuance of $1,250,000 School Bonds of the County of Anson,' which was adopted by the Board of Commissioners on May 19, 1952, and which (a) authorizes bonds of the County of Anson of the maximum aggregate principal amount of $1,250,-000 to finance the cost of the . . . (2) erection of a new high school building with gymnasium at a suitable location in the northwestern section of the County, and . . . (b) also authorizes the levy of an annual tax sufficient to pay the principal of and interest on the bonds authorized thereby; and approve the indebtedness to be incurred by the issuance of said bonds?"

Proposition No. 2 was as follows:

"If the existing high school building in Wadesboro is made available to and adequate for all white school children in Anson County and fully staffed and equipped to serve as a central high school for the white high school children of the county, and would meet with the approval of the State Board of Education, should the County Board of Education erect, at an estimated additional expense of between approximately $300,000 and $400,000, a new high school building with gymnasium for white children, and teacherage, in the northwestern section of the County?"

At the bottom of each ballot there appeared the word "Yes" followed by a square and "No" followed by a square. Instructions were printed thereon directing the voters how to mark each ballot so as to indicate their approval or disapproval of the propositions submitted.

Proposition No. 1 was approved by a majority of 76, and Proposition No. 2 was disapproved by a majority of 266.

The result of the election was duly declared 7 July 1952, and as a result thereof the Board of Commissioners now propose to issue only $950,000 in bonds and to abandon Project No. 2 for the erection of a new high school and gymnasium in the northwestern section of the County.

Anson County has assumed all bond and other indebtedness of all school districts in the County.

On 6 August 1952 plaintiff instituted this action to invalidate said election and enjoin the issuance of the bonds authorized thereby and in any event to restrain the enforcement of Proposition No. 2 and the resultant abandonment of the project for the erection of a new high school with gymnasium in the northwestern section of the County.

After hearing the cause on the pleadings, exhibits, and affidavit filed, the court below found the facts in some detail and, upon the facts found, entered judgment denying plaintiff's prayer for a restraining order and dismissing the action.

Plaintiff excepted and appealed.

*Banks D. Thomas and J. C. Sedberry for plaintiff appellant.*
*Taylor, Kitchin & Taylor for defendant appellees.*

BARNHILL, J.　This Court in recent decisions has fully discussed the law controlling elections on school capital outlay bonds, the right of the proper officials to divert or transfer the proceeds of such bonds to other projects, the authority of the local school administrative unit on the one hand, and of the board of county commissioners on the other, in respect to school administration; the provision of funds for the erection, enlargement, remodeling, and repair of school buildings, and like questions which are either directly or indirectly at issue on this appeal. *Waldrop v. Hodges,* 230 N.C. 370, 53 S.E. 2d 263; *Feezor v. Siceloff,* 232 N.C. 563, 61 S.E. 2d 714; *Gore v. Columbus County,* 232 N.C. 636, 61 S.E. 2d 890; *Mauldin v. McAden,* 234 N.C. 501, 67 S.E. 2d 647; *Atkins v. McAden,* 229 N.C. 752, 51 S.E. 2d 484; *Johnson v. Marrow,* 228 N.C. 58, 44 S.E. 2d 468; *Board of Education v. Lewis,* 231 N.C. 661, 58 S.E. 2d 725; *Kreeger v. Drummond,* 235 N.C. 8, 68 S.E. 2d 800; *Edwards v. Board of Education,* 235 N.C. 345, 70 S.E. 2d 170; *Reeves v. Board of Education,* 204 N.C. 74, 167 S.E. 454. Any further general discussion at this time would serve no useful purpose. We shall, therefore, confine our discussion to the specific material questions posed for decision.

The exceptive assignments of error in the record are directed primarily to (1) findings of fact and conclusions of law made by the court below, and (2) the failure and refusal of the court to find certain facts and conclusions tendered and proposed by plaintiff. The material assignments present for decision these questions:

1. Was the bond order supported by resolutions filed by the proper school authorities of the county?

2. Did the ballots on Proposition No. 1 used in the election comply with the requirements of law or were they so confusing in phraseology and form as to invalidate the election?

3. Does the proposed bond issue exceed the net school indebtedness permitted by law, G.S. 153-87?

4. Did all the electors of the County, including those residing within the bounds of the municipal school administrative units, have a right to vote in said election?

5. Was the submission of Proposition No. 2 authorized, and, if not, did the submission thereof together with Proposition No. 1 so confuse the question of the bond issue as to render the election void?

6. Does the Board of Commissioners have authority to abandon the project for a new high school and auxiliary buildings in the northwestern section of the county and substitute in lieu thereof a central high school in Wadesboro?

1. RESOLUTIONS OF SCHOOL ADMINISTRATIVE UNITS. The three school administrative units filed with the Board of Commissioners identical resolutions. They disclose that the governing authorities of the three units had, in conference, agreed that the school plant facilities set forth in the several resolutions are needed for the maintenance of the public schools in the County and should be provided. Each resolution details the several proposed projects within the county and within each municipal school administrative unit. They comply with the requirements of G.S. 115-83. Each presented the proposed school plant facilities of the administrative unit in behalf of which it was filed. If it was necessary for the County Board of Education to propose the necessary projects for all three units, this was done. If, on the other hand, it is required that each unit file a petition setting forth its particular needs, then such petitions were filed, and the inclusion therein of projects not within the particular unit may be treated as mere surplusage. In any event the filing of the three petitions and the contents thereof disclose a commendable spirit of co-operation existing between the three units.

2. BALLOTS. The County Finance Act, now G.S. Ch. 153, Art. 9, was adopted in 1927, Ch. 81, P.L. 1927. It provides for the issuance of bonds for the erection and purchase of schoolhouses, G.S. 153-77 (a), and prescribes the form of ballot to be used in an election held to obtain approval by the electorate of a bond issue to finance the same. G.S. 153-96. The latter section is in part as follows:

"The form of the question as stated on the ballot shall be in substantially the words: 'For the order authorizing $ ......... bonds (briefly stating the purpose) and a tax therefor' and 'Against the order authorizing $ .......... bonds (briefly stating the purpose) and a tax therefor.'"

The Election Laws Act of 1929, Ch. 164, P.L. 1929, now G.S. Ch. 163, Art. 20, likewise makes provision for elections which shall apply "to all counties . . . and school districts . . ." G.S. 163-148, and "shall apply to and control all elections for the issuance of bonds . . . And the form of ballot in such elections shall be a statement of the question, with provisions to be answered 'Yes' or 'No,' or 'For' or 'Against' as the case may be," G.S. 163-150.

Whether the adoption of the latter statute in effect repealed the bond provisions of the County Finance Act, particularly in respect to the form

of the ballots to be used, is immaterial here. Both statutes were brought forward and re-enacted in the Act of 1943 which is known as our General Statutes. They are now in full force and effect. And as they relate to the same subject matter, they must be construed *in pari materia*. *S. v. Hill*, 236 N.C. 704, and cases cited.

Unfortunately, many successive Acts of the Legislature relating to the same subject matter are brought forward in the General Statutes without any attempt to eliminate provisions which were repealed by later provisions or re-enactments of the same statute or by other independent Acts relating to the same subject matter so that, in many respects, the General Statutes Act is a compilation rather than a codification of our statute law. The inevitable effect is to create conflicts and inconsistencies which must be resolved by the Court as occasion arises. But we find no material conflict here.

The ballot used in the bond election, in the beginning, states the question submitted for the approval or disapproval of the voters. This is followed by a brief statement of the purposes for which the proceeds of the proposed bonds are to be used. Each project is listed separately and is as brief as an intelligent statement thereof will permit. It incorporates the statement that a tax will be levied to pay the principal of and interest on the bonds in the event the bond issue is approved. This is followed by "squares opposite the affirmative and negative forms" and instructions as to how the ballot should be marked. We can find nothing here inconsistent with the provisions of the statutes prescribing the form of the ballot to be used, either as contained in the County Finance Act or the Election Laws statute. Instead, it would seem to be clear that the ballot is "substantially" in the form prescribed.

It is true the number of projects to be financed by the proposed bond issue, which were wisely incorporated in the ballot for the information of the voters, makes it somewhat longer than the usual ballot. Yet this creates no "confusion" such as would mislead intelligent voters. Nor is the use of the words "yes" and "no" rather than "for" and "against" of any material significance.

3. DEBT LIMITATION. The County of Anson has assumed all bonds and other indebtedness of all school districts in Anson County including city administrative units and districts formerly known as special charter districts. The court below so found and its findings are supported by the record. This being true, the County was authorized to issue bonds in an amount equal to eight per cent of "the assessed valuation of property as last fixed for county taxation." G.S. 153-83, 87. The proposed bond issue amounts to a fraction more than six per cent of such valuation. It follows that it is not in excess of the amount permitted by law.

4. ELECTORS ENTITLED TO VOTE.    It is the duty of the county to provide the funds required to furnish the necessary school plant facilities whether such facilities are located within or without the bounds of a local municipal school administrative unit, G.S. 115-83, and to levy a county-wide tax for the payment thereof, G.S. 153-77.    An election to obtain the approval of a proposed school facilities bond issue is county-wide in scope.    G.S. 153-91, 93.    *Reeves v. Board of Education, supra.* Those who may be subjected to the payment of the tax levied to pay the bonds and who are otherwise qualified to vote have a right to participate in a school bond election.

5. PROPOSITION No. 2.    The submission of this proposition and the subsequent decision to abandon the construction of a new high school in the northwestern section of the County represents the unilateral action of the Board of Commissioners of the County.    There is nothing in the record to indicate that the Board of Education in any wise approved its action in respect thereto.    The question of the validity of such action relates primarily to the abandonment of one of the projects proposed by the County school authorities and approved by the Board of Commissioners.    It will be so treated, although what is here said applies with equal force to the two municipal school administrative units in the County.

While the statute, G.S. 153-93, permits the submission of more than one question or proposal in one and the same election, this contemplates questions authorized by law.    The second proposal submitted by the Board of Commissioners was without statutory sanction.    Certainly it constitutes no mandate.    Instead, it was wholly advisory in nature and the Board was without authority to include it in the proposal for a school bond election submitted to the voters for their approval.    Even so, we do not perceive that its action in so doing so complicated the election or so confused the voters as to render the election void.    Certainly there is nothing in the record which tends to support the contention that the election should be invalidated on that ground.

6. ABANDONMENT OF PROJECT FOR NEW HIGH SCHOOL IN NORTH-WESTERN SECTION OF COUNTY.    The appellee Board of Commissioners, in justification of its action in attempting to abandon the project for a new high school and to establish a central high school at Wadesboro, leans heavily on the language used in the statute, G.S. 115-83, and in a number of our decisions above cited to the effect that it is the duty of the Board of Commissioners to determine what expenditures shall be made for the erection, repair, and equipment of school buildings in the County.    G.S. 115-83; *Johnson v. Marrow, supra; Atkins v. McAden, supra.*    But this provision of the statute as construed by us may not be lifted out of its context so as to universalize its meaning and vest in the Commissioners an unqualified, unlimited right to determine, of their own motion, at any

time, and under any and all conditions, what expenditures are necessary to provide the county with the necessary school buildings and equipment. *Poindexter v. Motor Lines,* 235 N.C. 286, 69 S.E. 2d 495, and cases cited. The procedure necessary to vest the Board with the power to exercise the right, and the conditions under which such power is invoked, is prescribed by the statute, G.S. Ch. 115, Art. 10. It is definitely limited in scope. *Waldrop v. Hodges, supra; Gore v. Columbus County, supra.*

Speaking to the subject in *Atkins v. McAden, supra, Denny, J.,* says: "This control over the expenditure of funds for the erection, repair and equipment of school buildings by the board of county commissioners, will not be construed so as to interfere with the exclusive control of the schools vested in the county board of education or the trustees of an administrative unit." See also *School Commissioners v. Aldermen,* 158 N.C. 191, 73 S.E. 905.

The authority to operate the schools is vested in the Board of Education of the County. It determines, in the first instance, what buildings require enlargement or remodeling and whether new buildings are needed. It decides the location for school buildings and selects the sites for new ones. *Atkins v. McAden, supra.* It surveys annually the needs of the county school system in respect to school plant facilities and equipment and by resolution presents its plan to the Board of Commissioners. Then, and only then, it becomes the duty of the Board of Commissioners to determine what expenditures, if any, proposed for such purposes by the Board of Education, are necessary. When it determines that funds are necessary for any one or all of the proposed projects, then it must furnish the funds necessary to provide the facilities incorporated in the approved projects.

The right of the Board of Commissioners to determine what expenditures shall be made arises when a proposal for the expenditure of funds for school facilities is made by the Board of Education. Having determined that question and having provided the funds it deems necessary, its jurisdiction ends and the authority to execute the plan of enlargement or improvement reverts to the Board of Education. It selects and purchases new sites, approves the plans for the erection of new buildings or the remodeling or enlarging of old buildings. It lets the contracts, supervises the construction, and expends the funds.

We do not mean to say, however, that a plan once adopted must be adhered to under any and all conditions. The Board of Education and the Board of Commissioners have limited authority to alter the plan or to abandon particular projects.

Any change in plan must be initiated by the Board of Education. Then the Board of Commissioners, acting in good faith, may, in proper cases, after finding the facts required by statute, determine whether the reallo-

cation of funds or the change in plans is or is not necessary and approve or disapprove the expenditure of the funds theretofore furnished by it for the execution of the amended plan.

Here the Board of Education and the Wadesboro school administrative unit submitted plans which contemplated the erection of a new high school in the northwestern section of the County within the jurisdiction of the County Board and the enlargement of the high school within the jurisdiction of the Wadesboro school administrative unit. These plans were approved by the Board of Commissioners, and it found as a fact that it is necessary to provide the funds therefor. Both projects were incorporated in the bond resolution. Signs were erected on the site selected for the new high school before the election so that the electors might be fully advised as to its proposed location. The project for a new high school was submitted to and approved by the voters. Fair play demands that defendants keep faith with the electors and use the proceeds for the purposes for which the bonds were authorized, *Waldrop v. Hodges, supra,* unless some sound and compelling reason is made to appear why the original plan should be modified or one of the projects included therein should be abandoned. The procedure for determining the extent to which and the manner in which such change may be effected is charted in the decisions herein first cited.

Furthermore, the proposed action of the Board of Commissioners constitutes a clear invasion of the prerogatives of the Board of Education. The latter Board, not the Board of Commissioners, is vested with authority to decide whether there shall be one central high school or two high schools located in different sections of the County; to effect consolidations and to decide all like questions connected with the efficient operation of the schools of the County. *Kreeger v. Drummond, supra,* and cases cited.

It would seem that the avowed intention of the Board of Commissioners involves a complete change of purpose in respect to high schools, *Waldrop v. Hodges, supra; Rider v. Lenoir County,* 236 N.C. 620; G.S. 153-107, rather than a change in the manner and method of accomplishing that purpose, *Feezor v. Siceloff, supra.* It contemplates one central high school rather than two located in different administrative units of the County. This would involve the complete abandonment of any provision for a high school in one school administrative unit and the conversion of another in a different unit to serve all the white high school children of the County. This in turn entails the transfer of high school pupils and possible consolidations. What action, if any, the proper authorities may take in respect thereto is not disclosed. *Kreeger v. Drummond, supra.* Final decision on this phase of the case must, therefore, await future developments.

Our conclusions on the several questions presented for decision are supported by the decisions herein first cited.

It follows that the court below erred in concluding that the Board of Commissioners of Anson County may now abandon the project for a new high school and auxiliary buildings in the northwestern section of the County; reduce the amount of the authorized bonds to be issued and sold; and thus refuse to furnish the funds for a project it has already approved as a necessary part of the County school system. The cause will be remanded to the end that such orders and decrees may be entered as may be necessary to effectuate the purposes for which said bonds were authorized in compliance with this opinion.

Error and remanded.

PARKER, J., took no part in the consideration or decision of this case.