STATE EX REL. WILFRED J. TRAEGER AND OTHERS v.
ARTHUR E. CARLETON AND OTHERS, MEMBERS OF
VILLAGE COUNCIL OF VILLAGE OF HIBBING,
AND ANOTHER.[1]

May 28, 1954.

No. 36,327.

*Stein & Stein,* for appellants.
*Arthur O. Anselmo,* for respondents.

[1]Reported in 64 N. W. (2d) 776.

KNUTSON, JUSTICE.

Prior to October 24, 1950, the council of the village of Hibbing retained the services of Banister Engineering Company of St. Paul (referred to hereinafter as Banister) to make a survey of needed improvements in its sewer system and sewage disposal plant. Banister proceeded to make such survey and estimated that the cost of the proposed improvements would be $742,806.31. On October 24, 1950, the village council adopted a resolution reading as follows:

"WHEREAS, Chapter 394, Laws of 1949, State of Minnesota, grants additional powers to villages and certain cities to build, construct, reconstruct, repair, enlarge and improve main sewers and sewage disposal plants, and further authorizes the issuance and sale of the negotiable promissory coupon bonds of said villages and certain cities, and further provides a method of levying taxes for the payment thereof, and

"WHEREAS, the Village Council of said Village of Hibbing has a survey of the cost of necessary repairs, extensions, alterations, enlargements, replacements and reconstructions to said sewer system, including the sewage disposal plant thereof, to be made, and the said survey having been made by the firm of Banister Engineering Company of St. Paul, Minnesota, and the said cost thereof, as shown by said survey, being estimated in the amount of Seven Hundred Forty-two Thousand Eight Hundred Six Dollars and Thirty-one Cents ($742,806.31.)

"Now THEREFORE, BE IT RESOLVED, by the Village Council of the Village of Hibbing, St. Louis County, Minnesota, at a duly called and regular meeting thereof, legally held on the 24th day of October, 1950, a quorum being present, that in its opinion it is expedient to issue the negotiable promissory coupon bonds of said Village of Hibbing for public sale, in the aggregate amount of Seven Hundred Forty-two Thousand Eight Hundred Six Dollars and Thirty-one Cents ($742,806.31), for the following purposes, to-wit: of said sewer systems of the said Village of Hibbing, including the sewage disposal plant thereof, the said bonds to bear interest at the rate not to exceed two percentum (2%) per annum, and

"BE IT FURTHER RESOLVED, that the proposition of issuing said bonds be submitted to the electors of the said Village of Hibbing at a special election to be held on the 24th day of November, 1950, between the hours of 8:00 A. M., and 8:00 P. M., of said day, and that due notice of said Special Election be given as required by law."

On November 25, 1950, pursuant to said resolution, the electors of the village voted favorably upon the proposition of issuing the bonds. The question submitted to the electors was:

"Shall the negotiable promissory coupon bonds of the Village of Hibbing, St. Louis County, Minnesota, be issued and sold in the aggregate amount of $742,806.31, bearing interest at a rate not to exceed two percentum (2%) per annum, the proceeds thereof to be used for the repair, extension, alteration, enlargement, replacement and reconstruction of the system of sewers, including the sewage disposal plant thereof, of the Village of Hibbing, Minnesota?"

Thereafter, bids were called for based on the original Banister report. The bids exceeded the estimate by some $120,000. The original plans included two pumping lift stations. After the bids were received, the village council eliminated one lift station and the sewers it was intended to serve, together with some other sewers, and awarded contracts for the completion of the balance of the project at a meeting held on July 11, 1951. The estimate of the cost of constructing the lift station eliminated was about $33,000 and the sewers eliminated, about $34,000, making a total of $67,000.

Thereafter on July 31, 1951, the bonds of the village in the amount authorized by the election were sold.

On June 8, 1953, after the village had expended all but about $34,156.80 of the bond money, relators commenced this proceeding for a writ of mandamus seeking to compel the village to construct the pumping station eliminated from the original plan. The evidence is conclusive that such lift station would serve no useful purpose without constructing the sewers it was intended to serve. There is not enough money remaining from the bond issue to complete both. After a trial, the court denied relators' petition and

discharged an alternative writ theretofore issued. The appeal here is from an order denying relators' alternative motion for amended findings of fact, conclusions of law, and order for judgment or for a new trial.

Apparently the trial court based its decision upon the assumption that, when it appeared that the bond issue would be insufficient to complete the entire project, the village authorities had discretionary power to proceed with as much of it as could be done with the money available and to delete such part thereof as they saw fit. With that assumption we cannot agree.

■ The correct rule is stated in 64 C. J. S., Municipal Corporations, § 1929b, as follows:

*"Proceeds of the bonds* may be used for the purpose authorized by the vote, but not for a different purpose, or for a more limited purpose involving a system radically different from that contemplated by the voters."

In Tukey v. City of Omaha, 54 Neb. 370, 376, 74 N. W. 613, 615, 69 A. S. R. 711, the Nebraska court said:

"'* * * That when the governing body of a municipality is authorized by a vote of the people, and only thereby, to incur a debt for a particular purpose, such purpose must be strictly complied with, and the terms of the authority granted be strictly and fully pursued, is so well settled that it would be idle to cite authorities on the proposition."

See, also, Beers v. City of Watertown, 43 S. D. 14, 177 N. W. 502; Harding v. Board of Supervisors, 213 Iowa 560, 237 N. W. 625; Lewis v. City of Fort Worth, 126 Tex. 458, 89 S. W. (2d) 975.

It is probably true that the city may make minor changes in the plans but may not radically alter them so as to construct an entirely different system from that voted upon by the people. Hayes v. City of Seattle, 120 Wash. 372, 207 P. 607. See, also, Hodgman v. Chicago & St. P. Ry. Co. 20 Minn. 36 (48); State ex rel. Lang v. Anderson, 164 Minn. 134, 204 N. W. 925.

Apparently respondent, and possibly the trial court as well, has confused the authority of a governing body of a municipality to exercise its discretion in determining whether sewers and other improvements of a like nature should be extended with authority to change a contemplated improvement for which bonds have been authorized by a vote of the people from that voted upon. In the first situation, the courts will not interfere with the fair exercise of the village authorities' discretion. In the second situation, the village authorities have no discretion to exercise. Their authority is conferred by the vote of the people. They have no discretionary power to change the authority so granted, except possibly in minor details which do not affect the nature of the plan voted upon.

Had relators applied for injunctive relief to prevent issuance of the bonds when it appeared that the proceeds of the bonds would be insufficient to complete the project in substantial accordance with the plan approved by the vote of the people, it should have been granted.

■ We still have to answer the question: Can the taxpayer sit idly by until the proceeds of the bonds are expended in performing part of the project and then obtain relief by mandamus to compel the village to complete the entire project without showing that the village can do so out of the proceeds of the bond issue? We believe that this question must be answered in the negative. Ordinarily, mandamus will not lie to compel a municipal corporation to proceed with a project of this kind without a showing that it has the money to do so. Mandamus is an extraordinary legal remedy. It is granted only when the right is clear. Before it is issued to compel a municipal corporation to act in a matter of this kind, it must appear from the writ that the municipality has the funds with which to proceed. Powell v. Township of Carlos, 177 Minn. 372, 225 N. W. 296.

■ Here it appears that there remains on hand slightly over $34,000 or enough to possibly complete the lift station deleted from the original plans. There is not sufficient money to complete both the lift station and the sewers it is intended to take care of. The

lift station without the sewers is of no value. Mandamus will not issue in cases where, if issued, it would prove unavailing. State ex rel. Lum v. Archibald, 43 Minn. 328, 45 N. W. 606.

It also appears from the record that the federal government claims a priority on about half of the remaining funds for repayment of advances made by it for a preliminary survey. Under these circumstances, the record falls short of the necessary proof required for the issuance of a writ of mandamus.

The trial court was also of the opinion that the ordinance for the submission of the bond issue was general in form. It is not clear whether the trial court was of the opinion that the Banister report was part of the ordinance or not. It is, however, apparent that the Banister report was incorporated by reference into the resolution adopted by the village. It is expressly referred to in the resolution. The vote was upon a bond issue in the exact amount, even to cents, of the estimate in the Banister report. There can hardly be any doubt, under these circumstances, that the people voted upon the question whether bonds should be issued for the construction of the entire system of improvement included in the Banister report.

While we do not agree with the theory on which the trial court denied the writ, we are of the opinion that the result is right as a matter of law, and therefore the decision should be affirmed.

Affirmed.