Melissa DOUGLAS, petitioner,
Appellant,

v.

STILLWATER AREA PUBLIC SCHOOLS, INDEPENDENT SCHOOL DISTRICT 834, et al., Respondents.

A16-1686

Court of Appeals of Minnesota.

Filed June 19, 2017

Erick G. Kaardal, Mohrman, Kaardal & Erickson, P.A., Minneapolis, Minnesota (for appellant).

Peter G. Mikhail, James J. Thomson, Elizabeth Brodeen-Kuo, Kennedy & Graven, Chartered, Minneapolis, Minnesota (for respondents).

Considered and decided by Halbrooks, Presiding Judge; Schellhas, Judge; and Toussaint, Judge.*

## OPINION

HALBROOKS, Judge

Appellant challenges the denial with prejudice of her request for a writ of mandamus, arguing that the district court erred by (1) declining to compel respondent Stillwater Area Public Schools, Independent School District 834 (the school district) to obtain voter approval on planned changes to its use of bond proceeds and (2) concluding that it did not have authority to issue a writ of mandamus to direct the school district to hold another bond referendum. Because, pursuant to Minn. Stat. § 475.58, subd. 4, the ballot language alone defines the scope of the purpose of a bond referendum and because a municipality may make minor changes to an approved project without

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.
1. The school district's board members are also listed as respondents, but we refer to the

holding another bond referendum, we affirm.

## FACTS

In November 2014, the school district [1] reviewed a report and recommendation regarding its current and future facility needs. Based on this report, the school district submitted a proposed project to the Minnesota Department of Education (MDE) for review and comment in February 2015, and it resolved to seek voter approval for the proposed project through a bond referendum. A summary of the school district's proposed project stated, "The bond referendum will be a single-question in the amount of $97,500,000, based on the following key project components." (Emphasis omitted.) The school district's key project components included plans to spend $9,809,250 on upgrades to playground surfaces, pre-school rooms, and HVAC systems at various facilities, and also to reconfigure rooms at existing elementary schools.

The MDE provided a positive review and comment. Relevant to this appeal, the MDE summarized cost estimates for the following elementary schools by project type and location:

collective respondents as the school district.

Marine Elementary

| | |
|---|---|
| Playground Improvements | $101,000 |
| Renovations | $25,000 |
| Fees / FF&E / Contingency | <u>$45,019</u> |
| | $171,019 |

Oak Park Elementary

| | |
|---|---|
| HVAC Upgrades | $1,100,000 |
| Playground Improvements | $101,000 |
| Renovations | $25,000 |
| Fees / FF&E / Contingency | <u>$438,042</u> |
| | $1,664,042 |

Withrow Elementary

| | |
|---|---|
| Playground Improvements | $101,000 |
| Renovations | $25,000 |
| Fees / FF&E / Contingency | <u>$45,019</u> |
| | $171,019 |

And the MDE directed the school district to "publish a summary of the review and comment statement ... in the legal newspaper of the district ... prior to holding a referendum for bonds."

The school district published a summary of the project and the MDE's review and comment that included publication of the cost estimates outlined above. The school district also published additional materials highlighting the planned changes to Withrow, Marine, and Oak Park elementary schools on each school's website. No publication announced or referenced any school closure.

On May 12, 2015, the school district held a bond referendum and asked if voters would authorize it to issue a bond in an amount not to exceed $97,500,000. A majority of the voters approved the bond referendum.

Less than one year later, the school district resolved to close Withrow, Marine, and Oak Park elementary schools by the end of the 2016-2017 school year. The school district's decision to close these schools was challenged in a separate legal action. This court upheld the school district's decision, concluding that the resolution to close these schools was valid. *834 VOICE v. Indep. Sch. Dist. No. 834*, 893 N.W.2d 649, 658 (Minn.App. 2017), *review denied* (Minn. May 19, 2017). Because these schools were scheduled to close by the end of the 2016-2017 school year, the school district decided not to make any of the proposed improvements to Withrow and Marine elementary schools and not to make the playground improvements at Oak Park Elementary School, which it planned to convert to an administrative facility.

Appellant Melissa Douglas petitioned for a writ of mandamus, asking the district court to direct the school district to hold another bond referendum. Douglas's basis for the writ was that the school district planned to use the bond proceeds for a different purpose once it resolved to close the three elementary schools. The school

district moved to dismiss Douglas's petition or, in the alternative, for summary judgment.

After a hearing, the district court granted summary judgment to the school district and dismissed Douglas's petition with prejudice. It concluded that the school district did not need to hold another bond referendum because its decisions to abandon playground improvements at the elementary schools and to repurpose Oak Park from an elementary school into an administrative facility were not different from the purpose of the bond referendum. The district court also held that it had no authority to order a writ of mandamus to compel another bond referendum. This appeal follows.

## ISSUES

I. Did the district court err in determining that the school district did not need to hold another bond referendum?

II. Did the district court err in concluding that it did not have the authority to grant a writ of mandamus to require the school district to hold another bond referendum?

## ANALYSIS

■ On appeal from summary judgment, we review the record to determine "whether any genuine issues of material fact exist, and whether the [district court] erred in [its] application of the law." *First Baptist Church of St. Paul v. City of St. Paul*, 884 N.W.2d 355, 358 (Minn. 2016) (quotation omitted). Because neither party disputes any material fact, our analysis is limited to determining whether the district court erred in its application of the law.

## I.

Douglas argues that the school district must hold another bond referendum because it is abandoning or repurposing improvements to three elementary schools, which she contends is a different use from the bond referendum's original purpose. The school district maintains that it does not need to hold another bond referendum because it is within its discretion to abandon certain improvement projects and because the HVAC upgrades at Oak Park are within the purpose stated in the ballot language.

Minn. Stat. § 475.58, subd. 1 (2016) provides: "Obligations authorized by law or charter may be issued by any municipality upon obtaining the approval of a majority of the electors voting on the question of issuing the obligations." A school district is a municipality. Minn. Stat. § 475.51, subd. 2 (2016). A school district "may issue bonds for the acquisition or betterment of school facilities, including gymnasiums, athletic fields, stadia, teacherages, school garages, school buses, and all other facilities for administration, academic instruction, and physical and vocational education." Minn. Stat. § 475.52, subd. 5 (2016).

The use of bond proceeds is governed by statute:

> The proceeds of obligations issued after approval of the electors under this section may only be spent: (1) for the purposes stated in the ballot language; or (2) to pay, redeem, or defease obligations and interest, penalties, premiums, and costs of issuance of the obligations. The proceeds may not be spent for a different purpose or for an expansion of the original purpose without the approval by a majority of the electors voting on the question of changing or expanding the purpose of the obligations.

Minn. Stat. § 475.58, subd. 4. To consider whether the school district intends to use

its bond proceeds for a different purpose, we must first determine what defines the scope of a bond referendum's purpose.

## A.

■ Douglas argues that the scope of the purpose, as stated in Minn. Stat. § 475.58, subd. 4, includes both the ballot language and the school district's resolution that incorporated the MDE's positive review and comment. The school district asserts that the ballot language alone defines its scope of authority to use the bond proceeds. We review the construction and interpretation of a statute de novo. *Breza v. City of Minnetrista*, 725 N.W.2d 106, 110 (Minn. 2006).

■ "In the absence of statutory definitions, we interpret the words in a statute according to their plain and ordinary meaning." *Shire v. Rosemount, Inc.*, 875 N.W.2d 289, 297 (Minn. 2016); *accord* Minn. Stat. § 645.08(1) (2016). We only apply rules of statutory construction if a statute is ambiguous. *ILHC of Eagan, LLC v. County of Dakota*, 693 N.W.2d 412, 419 (Minn. 2005). A statute is ambiguous if its language is subject to more than one reasonable interpretation. *Hans Hagen Homes, Inc. v. City of Minnetrista*, 728 N.W.2d 536, 539 (Minn. 2007).

The relevant statute here permits a school district to use bond proceeds "for the purposes stated in the ballot language." Minn. Stat. § 475.58, subd. 4. No statute defines "ballot language." The district court concluded that the plain meaning of "ballot language" is the language on the ballot. The district court noted that there is little law that guided its interpretation but reasoned that this plain-language interpretation is consistent with a prior Minnesota Supreme Court decision, which held that campaign promises do not bind a municipality to a specific purpose that the voters authorized. *See State v.*

*Trask*, 155 Minn. 213, 216, 193 N.W. 121, 122 (1923).

■ Douglas asserts that the language of Minn. Stat. § 475.58, subd. 4, is unambiguous and clearly requires voter approval of any misdirected use of bond proceeds, and because the school district repurposed its bond proceeds, the electors have the right to approve or deny this new purpose. Douglas urges us to include the school district's public notice, in addition to the ballot language, in our analysis of the scope of the bond referendum's purpose because the public notice provides additional context of the school district's purpose for holding a bond referendum. Based on a plain-language reading of the statute, we conclude that Minn. Stat. § 475.58, subd. 4, unambiguously limits the scope of a bond referendum's purpose to the language on the ballot.

A municipality must publish notice of its intention to hold a bond referendum, and this notice "shall be given in the manner required by law and shall state the maximum amount and the purpose of the proposed issue." Minn. Stat. §§ 475.521, subd. 2(b), .59 (2016). The legislature clearly intended a municipality to state its purpose for holding a bond referendum in the ballot question and in its public notice. *See* Minn. Stat. §§ 475.58, subd. 4, .59. Relevant to this appeal, a municipality may only spend bond proceeds "for the purposes stated in the ballot language." Minn. Stat. § 475.58, subd. 4. The statute governing spending does not mention the purpose stated in the public notice, and we will not read such language into the statute. *See Metro. Sports Facilities Comm'n v. County of Hennepin*, 561 N.W.2d 513, 516-17 (Minn. 1997) (declining "to read into [a] statute a provision the legislature purposely omits or inadvertently overlooks" (quotation omitted)).

Douglas also argues that other information—the MDE's review and comment, the school district's published notice, and the school district's resolution—binds the school district because these documents amount to a social contract. *See Busse v. City of Golden*, 73 P.3d 660 (Colo. 2003); *Parker v. Anson County*, 237 N.C. 78, 74 S.E.2d 338 (1953). This argument is without merit because Douglas fails to cite to any binding authority.

We conclude that the statutory language in Minn. Stat. § 475.58, subd. 4, unambiguously limits the scope of the bond referendum's purpose to the language on the ballot. Next, we must identify the bond referendum's original purpose and determine whether the school district's intended use for the bond proceeds constitutes an abandonment of that purpose or serves a different purpose; either would require the school district to hold another bond referendum.

## B.

The school district asked the voters to answer the following ballot question for its bond referendum:

> Shall the [school district] be authorized to issue its general obligation school building bonds in an amount not to exceed $97,500,000 to provide funds for the acquisition and betterment of school sites and facilities, including the construction and equipping of a classroom addition and various other improvements to the Stillwater High School site and facility to allow that facility to serve grades 9 to 12 and the construction of an activity center at that site; the acquisition of land for and the construction and equipping of an elementary school facility and a transportation terminal; the construction of upgrades and improvements to the Pony Stadium and various other athletic sites and facilities; and the acquisition and installation of HVAC systems and various other improvements to existing elementary school sites and facilities?

A majority of the voters answered this question in the affirmative. The language in this ballot question defines the scope of the bond referendum's original purpose.

The school district contends that it does not need to hold another bond referendum because its intended use of the bond proceeds is not for a different purpose and it has not abandoned the original purpose for requesting the bond proceeds. Douglas maintains that the school district is using its bond proceeds for a different purpose—either repurposing the upgrades to Oak Park Elementary School or abandoning its intended upgrades to Withrow and Marine elementary schools.

We address in turn (1) whether using the bond proceeds to make HVAC upgrades at Oak Park Elementary School is a different purpose and (2) whether the school district's decision not to make other improvements to the three schools that it subsequently decided to close constitutes an abandonment of the bond referendum's purpose.

### 1.

■ Douglas maintains that the school district plans to use the bond proceeds for an unauthorized purpose because it will make HVAC upgrades at Oak Park, even though Oak Park will transition from an elementary school to a central services facility. We disagree.

The district court determined that the school district "would not violate § 475.58, subd. 4, by using bond proceeds to make improvements at Oak Park." It reasoned that the broad purpose of the ballot language is "the acquisition and betterment of school sites and facilities" and the ballot

language and punctuation—"including," in particular—identified a non-exclusive list of examples that would satisfy the broad purpose authorized by the voters. The district court determined that making HVAC upgrades to Oak Park would still be for "the acquisition and betterment of school sites and facilities." Alternatively, the district court concluded that the voters also specifically authorized the school district to use bond proceeds for "the acquisition and installation of HVAC systems and various other improvements to existing elementary school sites *and facilities*." (Emphasis added.) Thus, the broad or specific purpose for making HVAC upgrades authorizes the school district to spend bond proceeds on HVAC upgrades at the Oak Park facility.

Douglas argues that the ballot language demonstrates that "including" does not signify a nonexclusive list, that the semicolons separate the ballot language into multiple clauses, and that "including" only pertains to the first clause, regarding improvements at Stillwater High School. Minnesota caselaw and a plain reading of the ballot question belie her argument.

Minnesota appellate courts have consistently held that "including" indicates a nonexclusive list. *LaMont v. Indep. Sch. Dist. No. 728*, 814 N.W.2d 14, 19 (Minn. 2012) ("The word "includes" is not exhaustive or exclusive."); *Sunrise Lake Ass'n, Inc. v. Chisago Cty. Bd. of Comm'rs*, 633 N.W.2d 59, 64 (Minn. App. 2001) ("[T]he terms "similar" and "including" indicate that the ordinance contains a non-exclusive list of examples."). And semicolons can either (1) separate dependent clauses in a series that contains internal commas or (2) separate long, dependent clauses. William A. Sabin, *The Gregg Reference Manual* ¶ 184, 186 (8th ed. 1996).

Based on our plain reading of the ballot question, the broad purpose of the bond referendum is "to provide funds for the acquisition and betterment of school sites and facilities." Because "including" indicates a nonexclusive list, and because semicolons can separate long, dependent clauses, all of the following dependent clauses in the ballot question here signify a nonexclusive list. We conclude that making HVAC upgrades at Oak Park is within the broad purpose of using the funds for the betterment of school sites and facilities. Moreover, the ballot language also specifically addresses HVAC upgrades in the last dependent clause, stating that one purpose of the bond proceeds would be to provide funds for "the acquisition and installation of HVAC systems and various other improvements to existing elementary school sites *and facilities*." (Emphasis added.) Thus, whether Oak Park functions as an elementary school or a district facility, the ballot language clearly permits the school district to make the HVAC improvements.

Douglas also argues that, by definition, the closure of an elementary school cannot be for the betterment of school sites and facilities. School districts may seek voter approval to issue bonds "for the acquisition or betterment of school facilities." Minn. Stat. § 475.52, subd. 5. "Betterment includes reconstruction, extension, *improvement*, repair, remodeling, lighting, equipping, and furnishing." Minn. Stat. § 475.51, subd. 8 (2016) (emphasis added) (quotation marks omitted). The school district's plans to make HVAC improvements at Oak Park fall within the statutory definition of the betterment of school sites and facilities.

We conclude the school district did not violate Minn. Stat. § 475.58, subd. 4, and does not need to hold another bond referendum to make HVAC improvements at Oak Park, even though the school district has since resolved to repurpose it as an administrative facility. The bond referendum authorizes HVAC upgrades at Oak Park because this use satisfies the broad

purpose of the acquisition and betterment of school facilities, and more specifically, it meets the purpose of spending bond proceeds on HVAC upgrades to existing elementary school sites and facilities.

## 2.

■ Douglas argues that the school district's decision to close three elementary schools, and cancel improvements scheduled at those schools, constitutes abandonment of the original purpose of the bond referendum, which requires voter approval. Abandonment of the use of bond proceeds is governed by statute:

> If the contemplated use be afterward abandoned, or if any balance of the proceeds of the obligations remains after the use is accomplished, or if the governing body determines that at least 85 percent of the cost of the use has been paid or finally determined and retains in the fund an amount sufficient to pay the estimated costs of completion, the remainder of the fund may be devoted to any other public use authorized by law, and approved by resolution adopted or vote taken in the manner required to authorize bonds for such new use and purpose.

Minn. Stat. § 475.65 (2016). Here, the district court found that the school district "has abandoned a portion of the project" but not the *purpose* of the bond referendum. It concluded that Douglas failed to prove that the purpose of the bond referendum required the school district to make improvements to all of its elementary schools.

Douglas argues that the school district "gave up completely" on the authorized use of the bond proceeds by cancelling renovation and playground improvements at Withrow, Marine, and Oak Park elementary schools. Although the ballot language does not identify which elementary

school sites and facilities would receive improvements, Douglas contends that abandoning these improvements is a major change from the original purpose of the bond referendum because it relates to health and safety improvements at these elementary schools.

■ A municipality "may make minor changes in the plans but may not radically alter them so as to construct an entirely different system from that voted upon by the people." *State ex rel. Traeger v. Carleton,* 242 Minn. 296, 299, 64 N.W.2d 776, 778 (1954). The school district contends that its project modifications are minor and do not change the overall purpose of the bond proceeds because the closure of the three elementary schools only amounts to a 0.45% change in how it plans to use the entire amount of bond proceeds. We agree.

Because the ballot language does not specifically require the school district to improve any of the three elementary schools that it planned to close and because the project modifications are minor in scope, we conclude that the school district has not abandoned the purpose of the bond referendum.

In summary, we conclude that Minn. Stat. § 475.58, subd. 4, unambiguously limits the purpose of the bond referendum to the language on the ballot. Here, the ballot language states that HVAC upgrades would take place at elementary schools and facilities, without identifying specific locations. Because neither the cancellation of improvements at the elementary schools slated for closure nor the HVAC upgrade at Oak Park depart from the original purpose in this bond referendum, voter approval of these changes is not required. The district court properly determined that the planned changes to the school

district's projects do not violate Minn. Stat. § 475.58, subd. 4.

## II.

 Douglas argues that the district court has the authority to issue a writ of mandamus to require the school district to hold a referendum for the repurposing of the bond proceeds. The district court concluded that it had no authority to require the school district to hold a referendum. "When a decision on a writ of mandamus is based solely on a legal determination, we review that decision de novo." *Breza*, 725 N.W.2d at 110.

 A writ of mandamus may be issued to a school board "to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." Minn. Stat. § 586.01 (2016). "Mandamus is an extraordinary remedy based on equitable principles and is awarded at the discretion of the district court." *Chanhassen Chiropractic Ctr., P.A. v. City of Chanhassen*, 663 N.W.2d 559, 562 (Minn. App. 2003), *review denied* (Minn. Aug. 5, 2003). "The two primary uses of mandamus are (1) to compel the performance of an official duty clearly imposed by law and (2) to compel the exercise of discretion when that exercise is required by law." *Mendota Golf, LLP v. City of Mendota Heights*, 708 N.W.2d 162, 171 (Minn. 2006). But a writ of mandamus "does not control the particular manner in which a duty is to be performed and does not dictate how discretion is to be exercised." *Id.* And it is unavailable "in any case where there is a plain, speedy, and adequate remedy in the ordinary course of law." Minn. Stat. § 586.02 (2016).

As previously discussed, proceeds of bond obligations may not be spent for a purpose different from the purpose stated in the ballot language. Minn. Stat.

§ 475.58, subd. 4. But only the school district "may, according to its judgment and discretion," submit a ballot question for the purpose of issuing bonds. Minn. Stat. § 475.59. Here, the district court concluded that the law forbids the school district from unauthorized expenditures of proceeds of a bond obligation, but it does not permit the district court to order the school district to hold a referendum. The district court also determined that it could not dictate how the school district should exercise its own discretion. *See Powell v. Carlos Township*, 177 Minn. 372, 374, 225 N.W. 296, 297 (1929) ("[The township's] discretion cannot be controlled by the court.").

Douglas argues that the only remedy is to have the voters approve the new and different purpose for the bond proceeds. The district court stated:

If it were the case that the [school district's] plan would violate § 475.58, subd. 4, the Court would issue an order requiring the [school district] to comply with the law. But then it would be for the [school district] to decide whether to seek approval from the voters, modify or abandon the plan, or perhaps fund certain projects from other sources.

We conclude that the district court did not err by denying Douglas's request for a writ of mandamus. The district court correctly determined that it may only prohibit the school district from unauthorized spending; it cannot order the school district to hold a bond referendum.

## DECISION

We conclude that Minn. Stat. § 475.58, subd. 4, unambiguously limits the purpose of the bond referendum to the language on the ballot. Because the ballot language does not specifically identify which locations would receive improvements, the school district did not abandon the bond

referendum's purpose by subsequently cancelling planned improvements at Withrow, Marine, and Oak Park elementary schools or by making HVAC upgrades at Oak Park based on the school district's plans to transition Oak Park to an administrative facility. Therefore, the district court did not err by dismissing Douglas's request for a writ of mandamus and concluding that it had no authority to grant such relief here.

**Affirmed.**