BILLY L. MOORE, W. JOHN LORDEON, DAVID C. BAILEY, AND BOBBY D. CORN, PLAINTIFFS v. CHARLES WYKLE, SCOTT HARROWER, WENDELL BEGLEY, GRACE BRAZIL, T. G. DEWEESE, VERNON DOVER, WILLIAM WARREN, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES AS MEMBERS OR FORMER MEMBERS OF THE BUNCOMBE COUNTY BOARD OF EDUCATION, V. E. YARBROUGH, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT OF BUNCOMBE COUNTY SCHOOLS, THE BUNCOMBE COUNTY BOARD OF EDUCATION, GENE RAINEY, JESSE LEDBETTER, TOM SOBOL, DORIS GIEZENTANNER, BILL STANLEY, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES AS BUNCOMBE COUNTY COMMISSIONERS, THE BUNCOMBE COUNTY BOARD OF COMMISSIONERS, DEFENDANTS

No. 9128SC250

(Filed 4 August 1992)

1. **Schools § 7.3 (NCI3d); Taxation § 12 (NCI3d)— board of education—county commissioners—diversion of school bond funds—insufficiency of complaint against members**

Plaintiffs failed to state a claim against defendants as individuals and as members of a county board of education and a board of county commissioners where they alleged that defendants diverted school bond funds from school construction projects set forth in the bond resolution to the purchase of an administration and advanced education facility for the school system; plaintiffs did not allege that defendants acted corruptly or maliciously; and defendants did not act outside the scope of their duties as board members since the statutory limitation on the legal right to transfer or allocate funds from one project to another is exceeded only when a board uses funds derived from the sale of school bonds for non-school purposes, and all expenditures in this case were for school purposes.

**Am Jur 2d, Schools §§ 95, 96, 106, 107.**

2. **Schools § 7.3 (NCI3d); Taxation § 12 (NCI3d)— diversion of school bond funds—insufficiency of complaint against superintendent**

Plaintiffs stated no claim against defendant school superintendent based on the use of school bond funds for the purchase of a building from Square D for use as an administration facility where they did not allege that defendant was in a decision-making position as to acquisition of the Square

MOORE v. WYKLE

[107 N.C. App. 120 (1992)]

D building, and the complaint failed to allege with particularity any acts constituting fraud.

**Am Jur 2d, Schools §§ 95, 96, 106, 107.**

3. **Schools § 7.3 (NCI3d) — board of education — board of county commissioners — propriety of expenditure of school bond funds**

The trial court did not err in limiting its denial of motions to dismiss by defendant board of education and defendant board of county commissioners to the allegations relating to the propriety of the expenditure of school bond proceeds on the purchase and renovation of an administration building where the complaint did not include an allegation that monies from other sources of revenue were improperly diverted. A defense asserted in the answer of defendant board of education did not raise a claim that other monies were improperly applied and, in any event, plaintiffs could not rely on this defense to establish an additional claim against defendants.

**Am Jur 2d, Schools §§ 95, 96, 106, 107.**

4. **Schools § 6 (NCI3d) — proposed sale of school building — discretion of board of education — failure to state claim**

Plaintiffs' complaint failed to state a claim against defendant board of education concerning the proposed sale of a school building, even though the sale allegedly resulted from the board's improper purchase of an administration building with school bond funds, since the board's statutory discretion to determine that the school building was surplus property no longer needed for school purposes was not withdrawn by its actions with respect to the administration facility. N.C.G.S. § 115C-518(a).

**Am Jur 2d, Schools §§ 50-52.**

5. **Schools § 6 (NCI3d) — disposal of school property — preliminary injunction claim dismissed**

The trial court did not err in dismissing plaintiffs' claim for a preliminary injunction enjoining the disposal of school property where the complaint failed to allege facts showing irreparable harm and the underlying claim against defendants pertaining to the sale of the school property was dismissed.

**Am Jur 2d, Schools §§ 50-52.**

MOORE v. WYKLE

[107 N.C. App. 120 (1992)]

**6. Injunctions § 37 (NCI4th)— preliminary injunction—verification of complaint not required**

Verification of the complaint is not a condition for issuance of a preliminary injunction.

**Am Jur 2d, Injunctions §§ 263, 265.**

**Appealability of order refusing to grant or dissolving temporary restraining order. 19 ALR3d 459.**

APPEAL by plaintiffs from order entered 10 January 1991 by *Judge C. Walter Allen* in BUNCOMBE County Superior Court. Heard in the Court of Appeals 5 December 1991.

*Lindsay and True, by Stephen P. Lindsay and William H. Leslie, for plaintiff-appellants.*

*Roberts Stevens & Cogburn, P.A., by Gwynn G. Radeker and Walter L. Currie, and Womble Carlyle Sandridge & Rice, by Jim D. Cooley and G. Michael Barnhill, for defendant-appellees Wykle, Harrower, Begley, Brazil, Deweese, Dover, Warren, Yarbrough, and The Buncombe County Board of Education.*

*Joe A. Connolly for defendant-appellees Rainey, Ledbetter, Sobol, Giezentanner, Stanley, and The Buncombe County Board of Commissioners.*

PARKER, Judge.

Plaintiffs appeal from an order of partial dismissal pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. We affirm.

Plaintiffs' complaint, filed 19 October 1990, alleged in substance that defendants made unauthorized and unwarranted diversions of school bond proceeds to purposes other than those authorized by the official order of defendant Buncombe County Board of Commissioners ("Board of Commissioners") for a bond referendum approved by voters 22 September 1987. Relief prayed for included (i) a writ of mandamus requiring defendants to fulfill their legal duty of expending school bond proceeds in exact accordance with the bond resolution's stated purposes; (ii) a mandatory injunction for the same purpose; (iii) an injunction prohibiting defendants from confirming or otherwise permitting the sale of Biltmore School and adjacent property pending resolution of plaintiffs' action; (iv)

an independent audit and accounting of expenditures of all school bond proceeds; and (v) repayment by the individual defendants of the misappropriated monies and cessation of the use of property purchased therewith.

In December 1990, the individual defendant members of the Buncombe County Board of Education, Superintendent Yarbrough, and the Board of Education ("Board of Education defendants") moved to dismiss the complaint for failure to state a claim upon which relief could be granted. The individual defendant county commissioners and the Board of Commissioners filed a similar motion. Hearing of these motions was calendared for 17 December. On 14 December plaintiffs simultaneously moved to amend their complaint as of right and filed an amended complaint. The unverified amended complaint did not add any new claims against defendants; it incorporated by reference and attached copies of resolutions and minutes of the meetings of the two defendant boards. On 17 December the Board of Education defendants answered plaintiff's original complaint.

In light of plaintiffs' amended complaint, on 17 December the trial court offered to continue hearing of the motions to dismiss. The parties instead agreed to hearing of the motions to dismiss with respect to the amended complaint.

Factual allegations included that in June 1986 defendant Buncombe County Board of Education ("Board of Education") adopted a major capital construction needs resolution. The preamble stated the Board had previously identified twenty-two major construction projects totalling $51.3 million and needing immediate attention. These projects included constructing a new high school, replacing or adding onto other schools, and constructing or replacing buildings of the transportation department and administrative offices. The preamble also stated defendant Board had been requested to review its construction needs so that top priority needs could be addressed in a new county financing plan. Six proposed projects totalling $25 million were identified for inclusion in the new financing plan, "with said projects to be altered depending on community growth, project needs and cost at the time funding is made available." Defendant Board of Education resolved

> 2. That the six (6) proposed projects totalling $25 million delineated above are hereby identified by this Board for incorporation in Buncombe County's new financing plan; and

3. That this Board supports the Commissioners' proposal to fund needed major school construction projects from a new bond referendum and from [$.025] in ad valorem revenue being designated *only* for school construction by being appropriated to the School Capital Fund.

On 18 December 1986, defendant Board of Education adopted a revised major capital construction needs and bond referendum resolution. The preamble stated construction priorities had been re-evaluated based on occurrences of the previous six months. Defendant Board of Education resolved

2. That the eight (8) proposed projects totalling $26,500,000 delineated in the attachment are hereby identified by this Board for incorporation in a new bond referendum; and

3. That this Board hereby declares its support for a new 1987 bond referendum for public school construction and lends its support to the Buncombe County Commissioners in their efforts to provide adequate public school facilities.

On 25 March 1987 defendant Board of Education adopted a resolution revising the 18 December resolution. The preamble stated defendant Board of Commissioners had called for a bond referendum to be held 22 September 1987 and defendant Board of Education had continued "the process of re-evaluating the immediate Buncombe County school construction needs in order to address as many . . . needs within the same total dollars resulting in the [11 March 1987 list]." The preamble continued

WHEREAS, it is the opinion of this Board that this revised March 11, 1987, listing of ten (10) school projects should be the priority projects proposed by this Board and identified as 1987 bond referendum projects and that the attached March 18, 1987, revised *Estimate Project Timetable* should be used by the administration in developing cash flow projections, even though project schedules can be altered depending on total county directions for issuing bonds.

This time defendant Board of Education resolved

1. That the attached March 11, 1987, *Recommended Priorities and Budget for School Bond Projects* is hereby adopted by this Board as those ten (10) school projects for incorpora-

tion in the 1987 bond referendum, in place of those identified on December 18, 1986;. and

2. That the Buncombe County Commissioners are respectfully requested to accept this revised project listing which is within the same $26,500,000 total; and

3. That the Superintendent's Office is hereby instructed to utilize the March 18, 1987, revised *Estimated Project Timetable* for developing cash flow projections.

Again on 29 June 1987 defendant Board of Education adopted a resolution requesting defendant Board of Commissioners to provide additional school facilities. The preamble referred to the June and December 1986 and the March 1987 resolutions. This time defendant Board resolved

Section 1. The Buncombe County Board of Education has determined and found as a fact that adequate school facilities are not now available . . . to comply with the requirements of Section 2 of Article IX of the Constitution of North Carolina for the maintenance of schools nine months in every year and that it is necessary . . . to provide additional school facilities . . . by erecting additional school buildings and other school plant facilities, remodeling, enlarging and reconstructing existing school buildings and other school plant facilities, and acquiring any necessary land and equipment therefor, the estimated cost of which is $26,250,000.

By Resolution No. 18788, adopted 30 June 1987, defendant Board of Commissioners made findings relating to a $54 million proposed bond issue and authorizing the submission of an application therefor with the Local Government Commission. The resolution reads in pertinent part:

WHEREAS, by resolution dated June 29, 1987, the Buncombe County Board of Education cited their determination of, and found as a fact, that adequate school facilities are not now available . . . to comply with the requirement of Section 2 of Article IX of the Constitution of North Carolina for the maintenance of schools nine months in every year and that it is necessary . . . to provide additional school facilities by erecting additional school buildings and other school plant facilities; remodeling, enlarging, and

> reconstructing existing school buildings and other
> school plant facilities; and acquiring any necessary
> land and equipment therefor, the estimated cost
> of which is $26,500,000;

. . . .

NOW, THEREFORE, BE IT RESOLVED . . . :

> 3. That the bond application be submitted to the
>    Local Government Commission addressing
>    the bond issue as previously described and for
>    the purposes outlined in this resolution.

On 7 July 1987 defendant Board of Commissioners ordered
that Buncombe County was authorized to contract a debt not ex-
ceeding $32 million to provide funds "for erecting additional school
buildings and other school plant facilities . . . and acquiring any
necessary land and equipment therefor, in order to provide addi-
tional school facilities in said County." Defendant Board of Educa-
tion's requested share of the bond sale proceeds was $26,250,000.00;
a request was also made by the Asheville City Board of Education.
As noted above, Buncombe County voters passed the bond referen-
dum on 22 September 1987.

Minutes of the 20 October 1987 meeting of defendant Board
of Education show consideration was given to an Education Center:

> 6. Education Center. The Education Center item on the Con-
>    sent Agenda was pulled to the regular agenda. Bill McElrath
>    addressed the Board pertaining to the need and plans for
>    an Education Center. Mr. Warren moved that the Board
>    approve the establishment of a Buncombe County Schools
>    Education Center with funding sources totalling $122,800
>    for 1987-88 to be provided as outlined by Mr. McElrath
>    and authorize the Superintendent to implement same. Mrs.
>    Brazil seconded and the motion carried. (Report filed).

Defendant Board of Education's long-range plan dated 21 December
1987 showed the Education Center as project 25, with an estimated
cost of $5 million.

The record shows that by the time of its 2 November 1988
meeting, defendant Board of Education had taken preliminary steps
to purchase property known as the Square D facility:

MOORE v. WYKLE

[107 N.C. App. 120 (1992)]

3. PROPERTIES.

 a. Square D Facility. The Board discussed this property with the attorney. Mrs. Brazil moved that the Board authorize the Vice-Chairman and the Secretary to execute and send the Option to Purchase and Memorandum of Option subject to the approval of the Board of Commissioners . . . and to further authorize such revisions to the Option and Memorandum of Option (other than the property to be purchased and the purchase price) as may be negotiated by the Superintendent and School Attorney. Mr. Harrower seconded and the motion carried. Mrs. Brazil was not present at the time the vote was taken.

At its 9 March 1989 meeting, defendant Board of Education adopted a resolution calling for acquisition of the Square D facility "to be used as an Advanced Education Center and to house the Administrative Offices, Maintenance Department and [C]entral [W]arehouse." At its 20 March 1989 meeting, defendant Board of Education adopted the following resolution:

RESOLUTION OF REQUEST FOR APPROVAL AND
APPROPRIATION FOR THE BUNCOMBE COUNTY SCHOOLS
ADVANCED EDUCATION CENTER

WHEREAS, the . . . Board of Education has determined that multiple long-range facility needs can be addressed by the acquisition of Square D Plant #2, which includes a gross building area of 122,593 square feet and approximately 65 acres, and

 . . . .

WHEREAS, this property acquisition and renovation will have a major cost savings impact upon this Board's long-range building plan affecting nine (9) projects, and

WHEREAS, such action is necessary and prudent if this Board is to address the total Buncombe County facility needs, and

WHEREAS, this Board intends to dispose of surplus school properties and the present site of the Administrative Offices [Biltmore School], the proceeds of which could be utilized to reduce the impact of any delays in priority projects . . . and

MOORE v. WYKLE

[107 N.C. App. 120 (1992)]

WHEREAS, this acquisition, when renovations, improvements and additions are complete, will ultimately allow this Board to establish an appropriate county-wide Advanced Education Center for both advanced instructional and vocational classes; equalize high school curriculum offerings throughout Buncombe County and, when fully implemented, house all Administrative Offices, Maintenance Department, Central Warehouse and other support services in adequate areas, and

WHEREAS, it is the opinion of this Board that the acquisition of the Square D property identified should be obtained as soon as possible in order for the renovations and improvements currently being planned to proceed.

NOW, THEREFORE BE IT RESOLVED . . . :

1. That the Commissioners appropriate $5,000,000 from the School Capital Fund to be used to purchase, renovate and furnish said property . . . .

On 2 May 1989 defendant Board of Commissioners adopted Resolution 19314, appropriating $5 million for the Education Center. The resolution reads in pertinent part

WHEREAS, the Board of Education requests the total $5 million be funded from the Buncombe County School Capital fund; and

WHEREAS the County Finance Officer has advised the Board that such funds are available in the . . . Capital Fund to cover this appropriation with the caveat that certain expenditures, yet to be identified, now programmed in the School Capital Fund cash flow model will have to be offset from proceeds of the sale of property on the part of the . . . Board of Education and that such can reasonably be expected without delaying any programmed school construction through 1991 . . . .

Plaintiffs' complaint further alleges that in February 1990 defendant Board of Education adopted a resolution asking for a delay in two bond referendum projects. The purchase, renovation, and operation costs of the Square D facility made funds to complete the two projects unavailable. Plaintiffs alleged that "[b]y delaying

MOORE v. WYKLE

[107 N.C. App. 120 (1992)]

the two bond referendum projects, the New Owen High School could be completed and the others would be completed with monies obtained from the expected sale of [s]urplus [p]roperty including, but not limited to Venable School and/or Biltmore School."

After hearing the motions to dismiss, the trial court granted relief as follows:

1. The Amended Complaint fails to state a claim against the individual defendants Charles Wykle, Scott Harrower, Wendell Begley, Grace Brazil, T.G. Deweese, Vernon Dover and William Warren, individually and in their official capacities as members or former members of the Board of Education; V.E. Yarbrough, individually and in his official capacity as Superintendent . . . ; Gene Rainey, Jesse Ledbetter, Tom Sobol, Doris Giezentanner, and Bill Stanley, individually and in their official capacities as members of the Board of Commissioners[,] and the action is hereby dismissed as to those individual parties.

2. The Amended Complaint fails to state a claim as to the proposed sale of Biltmore School and its adjacent property and the provisions of the Amended Complaint [pertinent thereto] and any injunction of said sale are hereby dismissed.

3. The Amended Complaint is not verified and, therefore, cannot serve as a basis for any . . . preliminary injunctive relief requested ·. . . and all portions of the Amended Complaint requesting preliminary injunctive relief are therefore dismissed.

4. The motions to dismiss are denied as to [defendants] Board of Education and . . . Board of Commissioners as corporate public bodies but only to the extent that the allegations . . . relate to the propriety of the expenditure of bond proceeds on the Square D property.

[1] On appeal to this Court plaintiffs present four contentions. First plaintiffs contend the trial court erred in determining their amended complaint failed to state a claim against members or former members of defendant Board of Education, defendant Superintendent Yarbrough, and members of defendant Board of Commissioners in their individual and official capacities. We disagree.

Regarding personal liability of a public official, the North Carolina Supreme Court has said

"It is settled law in this jurisdiction that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto. The rule in such cases is that an official may not be held liable *unless it be alleged and proved* that his act . . . was corrupt or malicious (cites omitted), or that he acted outside of and beyond the scope of his duties." (Emphasis added.) As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability. *Carpenter v. Atlanta & C.A.L. Ry.*, 184 N.C. 400, 406, 114 S.E. 693, 696 (1922).

*Smith v. State*, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976) (quoting *Smith v. Hefner*, 235 N.C. 1, 7, 68 S.E.2d 783, 787 (1952)).

The Local Government Finance Act provides in pertinent part:

(b) The following directions and limitations shall bind the governing board in adopting the budget ordinance

(13) No appropriation of the proceeds of a bond issue may be made from the capital project fund account established to account for the proceeds of the bond issue except (i) for the purpose for which the bonds were issued, (ii) to the appropriate debt service fund, or (iii) to an account within a capital reserve fund consistent with the purposes for which the bonds were issued.

N.C.G.S. § 159-13 (Supp. 1991). The North Carolina Supreme Court, construing the predecessor of this statute, stated it

"does not place a limitation upon the legal right to transfer or allocate funds from one project to another within the general purpose for which bonds were issued. The inhibition contained in the statute is to prevent funds obtained for one general purpose [from] being transferred and used for another general purpose. For example, the statute prohibits the use of funds derived from the sale of bonds to erect, repair and equip school buildings from being used to erect or repair a courthouse or a county home or similar project."

MOORE v. WYKLE

[107 N.C. App. 120 (1992)]

*Dilday v. Board of Education*, 267 N.C. 438, 449, 148 S.E.2d 513, 520 (1966) (quoting *Atkins v. McAden*, 229 N.C. 752, 756, 51 S.E.2d 484, 487 (1949)).

In *Dilday*, a county board of education adopted a resolution allocating funds for projects which included the construction of a new consolidated high school for white students only and improvements to two high schools for black students only in the same attendance area. After a public hearing on the proposed allocations, the county board of commissioners enacted a bond order authorizing the issuance of school bonds, and the voters approved a referendum therefor. Having determined that under the Federal Civil Rights Act of 1964, existing high schools for the two races in the attendance area had to be consolidated, the board of education enacted and submitted to the board of commissioners a resolution requesting approval to depart from the pre-referendum allocation by omitting improvements intended for the two high schools for black students and using the funds for an enlarged consolidated school for students of both races. The board of commissioners took no action on the resolution. The board of education adopted another resolution stating that consolidation of all high schools in the attendance area was required to effect compliance with Title VI of the Civil Rights Act of 1964 and that the board of commissioners, upon advice of the county attorney, had advised that the original bond order gave the board of education latitude to proceed with the construction of a central high school to replace the separate facilities. The board of commissioners then borrowed money on bond anticipation notes and spent it in part on the new consolidated high school and made plans to borrow more money. *Id.* at 442-45, 148 S.E.2d at 515-18.

In this context, the Court also addressed the roles of a county board of education and board of commissioners as to schools:

> The authority and duty to operate county schools is vested in the county board of education, which is required to provide adequate school buildings, suitably equipped. G.S. 115-35; G.S. 115-29. The board of education determines, in the first instance, what buildings require repairs, remodeling, or enlarging; whether new school houses are needed; and if so, where they shall be located. Such decisions are vested in the sound discretion of the board of education, and its actions with reference thereto cannot be restrained by the courts absent a manifest

abuse of discretion or a disregard of law. *Feezor v. Siceloff*, 232 N.C. 563, 61 S.E.2d 714 [(1950)]; *Board of Education v. Lewis*, 231 N.C. 661, 58 S.E.2d 725 [(1950)]; *Waldrop v. Hodges*, 230 N.C. 370, 53 S.E.2d 263 [(1949)]; *Atkins v. McAden*, 229 N.C. 752, 51 S.E.2d 484 [(1949)].

Each year the board of education surveys the needs of its school system with reference to buildings and equipment. By resolution it presents these needs, together with their costs, to the commissioners, who are "given a reasonable time to provide the funds which they, upon investigation, shall find to be necessary for providing their respective units with buildings suitably equipped. . . ." G.S. 115-129. It is the board of commissioners, therefore, which is charged with the duty of determining what expenditures shall be made for the erection, repairs, and equipment of school buildings in the county. *Johnson v. Marrow*, 228 N.C. 58, 44 S.E.2d 468 [(1947)]. However, as pointed out in *Atkins v. McAden, supra*, the commissioners' control over the expenditure of funds . . . does not interfere with the exclusive control of the schools . . . vested in the county board of education . . . . Having determined what expenditures are necessary and possible, and having provided the funds, the jurisdiction of the commissioners ends. The authority to execute the plans is in the board of education. *Parker v. Anson County*, 237 N.C. 78, 74 S.E.2d 338 [(1953)].

*Dilday*, 267 N.C. at 448-49, 148 S.E.2d at 519-20. Although Chapter 115, Elementary and Secondary Education, has been recodified as Chapter 115C, the roles and duties of boards of county commissioners or of education have not changed so as to alter the authority of *Dilday*.

The Court went on to specify how a transfer of funds from one project to another must be effected:

1. The board of education must, by resolution, request the reallocation of funds and apprise the county commissioners of the conditions which bring about the needs for the transfer.

2. The commissioners must then investigate the facts upon which the . . . request is made.

3. After making their investigation, the commissioners must, by resolution, record their findings upon their official

minutes and authorize or reject the proposed reallocation of funds.

If the commissioners find (1) that, since the bonds were authorized, conditions have so changed that the funds are no longer necessary for the original purpose, or that the proposed new project will eliminate the necessity for the originally-contemplated expenditure and better serve the educational interests of the district involved, or that the law will not permit the original purpose to be accomplished in the manner intended, and (2) that the total proposed expenditure for the changed purpose is not excessive, but is necessary in order to maintain the constitutional school term, the commissioners may then legally reallocate the funds in accordance with the request from the board of education. Without such affirmative findings, however, the commissioners have no authority to transfer funds previously allocated to another purpose. And, without authority from the commissioners, the county board of education itself has no power to reallocate the funds.

Here, defendant School Board has strictly followed the appropriate procedures in requesting . . . reallocation . . . . However, when it requested defendant Commissioners' approval of the transfer to Central High School of funds . . . allocated to the Beaufort County and Belhaven high schools, the Commissioners — without taking any official action and without making any entry whatever upon their minutes — orally advised the Board of Education . . . that "the bond order . . . has sufficient latitude to enable the Board of Education to apply the funds to school building construction according to needs."

The transfer which the School Board has requested involves no change in the purpose for which the school bonds were issued, i.e., "to enable the County . . . to maintain public schools in [its] administrative unit for the nine months' school term prescribed by law." It does, however, involve a change in the method of accomplishing that purpose. *Prima facie*, the requested transfer would be entirely legal under ordinary circumstances . . . .

If the Commissioners approve the School Board's request for a transfer of funds, plaintiffs do not suggest that the voters

MOORE v. WYKLE

[107 N.C. App. 120 (1992)]

. . . will have been dealt with unfairly in that tax funds are being misspent or diverted *from educational purposes*.

. . . .

Since defendant Board of County Commissioners has not acted upon defendant School Board's request that it approve a reallocation of the funds in question, the latter has no authority, acting alone, to make the reallocation. Until defendant Commissioners approve the request, defendant School Board may not proceed.

*Dilday*, 267 N.C. at 449-52, 148 S.E.2d at 520-23 (citations omitted).

Applying the principles set out above, we note first that in the case under review, plaintiffs did not specifically allege any acts corrupt, malicious, or outside the scope of duty by any individual member of either board. Instead, all the allegations are as to acts of the two boards *qua* boards.

A county board of education is a corporate body with a legal existence separate and apart from the existence of its members. N.C.G.S. § 115C-40 (1991); *see also McLaughlin v. Beasley*, 250 N.C. 221, 222, 108 S.E.2d 226, 227 (1959) (construing predecessor statute); *Kistler v. Board of Education*, 233 N.C. 400, 405, 64 S.E.2d 403, 406 (1951) (under predecessor statute, affirming trial court's sustaining of demurrer *ore tenus* by individual defendant members of board of education because they had "no authority to exercise any of the powers the plaintiff seeks to enjoin"); *Miller v. Henderson*, 71 N.C. App. 366, 370, 322 S.E.2d 594, 598 (1984) (construing section 115C-40, claims against defendants as individuals and members of board of education failed because the acts and omissions forming the basis for claims against them were those of the board as a corporate entity and not those of the individual members of the board). We conclude plaintiffs' claims against the individual members of the two boards must fail for similar reasons.

Moreover, under *Dilday*, the statutory limitation on the legal right to transfer or allocate funds from one project to another is exceeded only where a board uses funds derived from the sale of school bonds for non-school purposes. Since in the instant case all expenditures were for school purposes, we conclude the individual defendants, as members of the Board of Education or Board of Commissioners, were not acting outside the scope of their duties.

**[2]** Although plaintiffs alleged Superintendent Yarbrough's representations to both defendant boards "were grossly overstated" and "without foundation in fact," plaintiffs did not allege Superintendent Yarbrough was in a decision-making position as to acquisition of the Square D facility. As a matter of law, a superintendent does not vote on appropriations. *See, e.g.,* N.C.G.S. § 115C-35(a) (1991) (board of education consists of members elected by the voters; N.C.G.S. § 115C-271 (1991) (superintendent chosen by board of education); N.C.G.S. § 115C-276 (1991) (duties of superintendent); N.C.G.S. § 115C-427 (1991) (superintendent to prepare budget).

Moreover, we agree with the Board of Education defendants that to the extent the allegations purport to allege some form of fraud by Superintendent Yarbrough, they fail to state any claim. In all averments of fraud the circumstances constituting fraud must be stated with particularity. N.C.G.S. § 1A-1, Rule 9(b) (1990). "The pleader . . . must state with particularity the time, place and content of the false misrepresentation. 2A Moore's Federal Practice ¶ 9.03, at 1924-28 (2d ed. 1978)." *Coley v. Bank,* 41 N.C. App. 121, 125, 254 S.E.2d 217, 219 (1979) (affirming dismissal for failure to state a claim under Rule 12(b)(6) ).

According to the North Carolina Supreme Court, dismissal under Rule 12(b)(6)

> is proper when one of the following three conditions is satisfied: (1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim.

*Jackson v. Bumgardner,* 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986) (citation omitted). Applying these precepts, with respect to the individual members of the two boards, no law supports plaintiffs' claim. With respect to Superintendent Yarbrough, plaintiffs' complaint on its face reveals both that no law supports plaintiff's claim and an absence of facts sufficient to make a good claim. We, therefore, hold the trial court did not err in dismissing plaintiffs' claims against the individual defendant members of both boards and against Superintendent Yarbrough.

**[3]** Next plaintiffs contend the court erred in limiting denial of defendants' motion to dismiss to the allegations relating to the

propriety of expending school bond proceeds, as opposed to other funds, on purchase of the Square D property. We disagree.

The Public School Building Capital Fund is used to assist county governments in meeting public school building capital needs. N.C.G.S. § 115C-546.1 (1991). Monies in the fund must

> be used for capital outlay projects including the planning, construction, reconstruction, enlargement, improvement, repair, or renovation of public school buildings . . . . As used in this section, "public school buildings" includes only facilities for individual schools that are used for instructional and related purposes and does not include centralized administration, maintenance, or other facilities.

N.C.G.S. § 115C-546.2(b) (1991).

On a Rule 12(b)(6) motion to dismiss, "[t]he question for the court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). Although the allegations in the complaint are treated as true, "[u]nder the 'notice theory of pleading' a statement of claim is adequate if it gives sufficient notice of the claim asserted 'to enable the adverse party to answer and prepare for trial, to allow for the application of *res judicata*, and to show the type of case brought.' " *Sutton v. Duke*, 277 N.C. 94, 102, 176 S.E.2d 161, 165 (1970) (quoting 2A *Moore's Federal Practice* ¶ 8.13 (2d ed. 1968) ).

As shown above, the essence of plaintiffs' complaint and amended complaint was that defendants made unauthorized and unwarranted diversions of school bond proceeds to purposes other than those authorized by the bond resolution, namely for purchase and renovation of the Square D facility. Neither complaint included an allegation that monies from other sources of revenue were improperly diverted. Plaintiffs argue that the following defense asserted in the answer of the Board of Education defendants raises a claim of misappropriation of revenues other than bond proceeds:

### Eighth Further Defense

Under the provisions of Chapters 134 and 534 of the North Carolina Session Laws of the General Assembly of 1983

. . . all proceeds from the sale of bonds pursuant to the September 22, 1987, bond referendum together with funds from prior bond referenda, 50% of revenues from the Buncombe County local sales tax, plus state sales taxes restricted for capital outlay expenditures, funds received from the State of North Carolina pursuant to the School Facilities Finance Act of 1987 ("ADM funds"), and revenues earned from the investment of the[se] funds while on deposit are placed in the School Capital Fund for appropriation by the Buncombe County Board of Commissioners. All requests by the Board of Education defendants for the expenditure of funds in connection with the acquisition and partial renovation of the Square D site have requested an appropriation from the School Capital Fund, there being no separate fund or account in which the proceeds from the sale of bonds pursuant to the September 22, 1987, bond referendum are segregated.

We are not convinced the defense raises a claim that other monies were improperly applied. Moreover, plaintiffs do not cite any authority for the proposition that upon defendants' motion for dismissal, the trial court could consider this defense to establish an additional claim by plaintiffs against defendants. Therefore, we conclude the trial court did not err in limiting denial of defendants' motions to dismiss to only the allegations relating to the propriety of the expenditure of school bond proceeds on the Square D facility. We agree with defendants that if plaintiffs desire to add a claim that defendants diverted sources of revenue other than school bond proceeds, plaintiffs should seek leave to amend under Rule 15(a).

[4] Plaintiffs also contend the court erred in determining their complaint failed to state a claim as to the proposed sale of Biltmore School and its adjacent property. Again we disagree.

The county board of education, not the board of commissioners, holds "all school property and [is] capable of . . . selling and transferring the same for school purposes." N.C.G.S. § 115C-40 (1991). When a board of education determines the use of any real property owned or held by it is unnecessary or undesirable for public school purposes, the board

may dispose of such according to the procedures prescribed in General Statutes, Chapter 160A, Article 12, or any successor provisions thereto. Provided, when any real property to which the board holds title is no longer suitable or necessary for

public school purposes, the board of county commissioners
. . . shall be afforded the first opportunity to obtain the
property.

N.C.G.S. § 115C-518(a) (1991). Such decisions are within the sound
discretion of a board of education and cannot be restrained by
the courts absent a manifest abuse of discretion or a disregard
of law. *See Dilday v. Board of Education*, 267 N.C. at 448, 148
S.E.2d at 520.

Applying this law to the case under review, no claim with
respect to disposition of the Biltmore School property will lie against
defendant Board of Commissioners. With respect to these defend-
ants, therefore, the court did not err in dismissing the claim.

Proceeds of a board of education's sale of real property must
be applied to reduce the county's bonded indebtedness for the
school administrative unit or for capital outlay purposes. N.C.G.S.
§ 115C-518(a) (1991). "In all actions . . . against a local board of
education, the order or action of the board shall be presumed to
be correct and the burden of proof shall be on the complaining
party to show the contrary." N.C.G.S. § 115C-44(b) (1991).

The Board of Education defendants argue dismissal was proper
because plaintiffs' complaint lacked allegations that in disposing
of the Biltmore School property, the board evinced a manifest abuse
of discretion or disregard of law. Although the sale of the Biltmore
School property may have resulted from the purchase of the Square
D property, the Board of Education's statutory discretion to deter-
mine that the Biltmore School property was surplus property no
longer needed for school purposes was not withdrawn by its actions
with respect to the Square D facility.

[5]  Finally plaintiffs contend the court erred in dismissing all their
claims for preliminary injunctive relief. Under a fair reading of
plaintiffs' prayer for relief, the only preliminary injunctive relief
requested was the enjoining of the disposal of the Biltmore School
property.

"A preliminary injunction . . . shall be issued . . . when it
appears by the complaint that the plaintiff is entitled to the relief
demanded, and this relief . . . consists in restraining the commission
. . . of some act the commission . . . of which, during the litigation,
would produce injury to the plaintiff . . . ." N.C.G.S. § 1-485 (1983).
An applicant for injunctive relief must set out with particularity

facts supporting the allegation of irreparable harm, so that the court can decide for itself if such injury will occur. *Coble Dairy v. State ex rel. Milk Commission,* 58 N.C. App. 213, 214, 292 S.E.2d 750, 751 (1982).

Paragraph 21 of plaintiffs' verified complaint included an allegation that due to the wrongful diversion of school bond proceeds to non-referendum projects, defendants were without sufficient funds to complete the referendum projects. Paragraph 18 alleged that defendant Board of Education had adopted a resolution asking for a delay in two referendum projects because bond proceeds, depleted through expenditure on the Square D facility, were insufficient to complete the projects. While these allegations may have been sufficient to show with particularity irreparable harm resulting from the expenditure of bond monies for the purchase of the Square D facility, plaintiffs did not seek to enjoin that purchase. Hence, on its face the complaint did not show allegations sufficient to state a claim for injunctive relief.

**[6]** The court reached the right result in dismissing the claim for injunctive relief, but the stated reason that the complaint was not verified is misplaced. At a show cause hearing an unverified complaint could not be treated as an affidavit, but verification of a complaint is not a condition for issuance of a preliminary injunction under N.C.G.S. § 1A-1, Rule 65, or under Chapter 1, Article 37, of the North Carolina General Statutes. Moreover, the cause of action against defendants pertaining to the sale of Biltmore School having been dismissed, no basis for an injunction remained.

Affirmed.

Judges GREENE and WYNN concur.